Mr. Carpenter. Thank you, Judge Floyd, and may it please the court. This case presents two fundamentally different views of how the district courts are supposed to exercise their discretion under the First Step Act. In our view, the district courts are supposed to do what they always do. They calculate the guidelines range correctly. They consider the mitigating and aggravating arguments, and they select an appropriate sentence based on all of the facts and circumstances in an individual case. But if you buy the government's argument, aren't you perpetuating an error that we previously said should be correct? That is warranted, which was the other argument we made in the district court. And so in the view of Can I ask you a question about the error? Is it your position that the district court had discretion to consider this error, or is it your position that the district court was obliged to fix this sentence error? I think you win. Either way, this case would have to go back, but what do we tell the district court judge on this case? Sure. So our view is that the court must calculate the guidelines range correctly. Now, just to clarify, that does not mean that the court must impose a sentence within the non-career offender range. Ultimately, the sentence that the court imposes is within its discretion. It has to consider all of the 3553A factors. But one of those factors, 3553A4, is the properly calculated guidelines range. And we don't see anything in the First Step Act that restricts the court from correctly calculating the guidelines range. And that marks an important contrast with 3582C2, where Congress has imposed the restriction that the government is asking you to impose in this case by saying that all guidelines, applications, decisions at the time of sentencing must be left in place. When Congress passed the First Step Act, it did so in the context of 3582C2. It knew that existed. It could have used that language if it wanted that same restriction to apply in this context, but it chose not to do that. And so it's also important to highlight that Congress passed the First Step Act not only in the immediate statutory context of 3582C2, which has these restrictions, it also passed it against a larger backdrop of Supreme Court cases for more than a decade, starting with Gall, stating that the correct calculation of the guidelines range is the lodestone, the anchor, and the starting point for the sentencing courts in exercising their discretion. So when Congress passes a statute against that backdrop, and it grants broad discretion to district courts to decide what is the appropriate sentence in a particular case, Congress's understanding would be that the courts follow that same process. They correctly calculate the guidelines range and use that as one of the important data points in their analysis of what sentence is ultimately appropriate. Is it your position that this is a plenary resentencing and doesn't matter? It doesn't matter. And so I would encourage the court to reserve that issue for a case where it does matter. Tell me why it doesn't matter. Your Honor, it doesn't matter for the reasons that Judge Locke set forth in the Black decision and the Benjamin case in Connecticut said as well, which is that to correct what is an undisputed legal error, we don't need a plenary resentencing. We don't need to bring someone back. We don't need all of the procedural trappings that come with it. Maybe it's a question about what plenary means in this circumstance. The Supreme Court, I think, has used plenary in this sentencing context to talk about something that's beyond what the statute specifically says. So here the statute specifically says you can impose a reduced sentence as if Sections 2 and 3 were in place at the time, or in effect at the time a covered offense was committed. So if anything, any correction beyond that, does that take us into plenary resentencing? So it doesn't, and the thing that's important to understand about that as if language is that its purpose is to make the statutory penalties here retroactive. And that's why the language is used about when the time that the offense was committed, because the general principle is that the statutory penalties that someone faces for an offense are those that were in effect at the time the offense was committed. So we shouldn't ignore intervening case law between the time of the sentence and the first step back. Exactly. Our view is that if Congress... What about changes to the guidelines? Do you impose today's guidelines, or the guidelines that were in effect at the time of the sentencing? Sure. So that's a question that's not precisely presented here, but we do think that the best view there is that you calculate the guidelines range as they would apply today, and you use that as a starting point, or as at least one data point in the court's analysis. So in other words, if someone was sentenced in 2005, and under the guidelines would have faced a career offender provision like here, where it's 262 months, and today, if that same person committed that same identical offense, a similarly situated offendant, but because of changes in the guidelines, would no longer be labeled as a career offender. And mostly this comes up in the context of burglary, which was removed from the career offender definition in 2016. Because the Sentencing Commission made a determination that if you have a prior burglary conviction, it's actually not a very good indicator of your recidivism rate. And so they took it out. It starts to sound a little bit like a resentencing, I'm afraid. Because 3582C tells us that a court may not modify a term of imprisonment once it's been imposed, except, and then your except provision is 1B, as otherwise expressly permitted by statute. Lots of other people aren't going to get the benefits of new guidelines or new precedent, because they're not expressly covered by another statute. And the Fair Sentencing Act expressly covers changes in Sections 2 and 3, sorry, the First Step Act, expressly covers changes in Sections 2 and 3 of the Fair Sentencing Act, but it doesn't expressly cover anything else. Well, but Congress didn't expressly prohibit consideration of those factors as it did under 3582C2. But 3582 is where they expressly prohibit any modification except as expressly permitted by statute. And so the expressly permitted language is satisfied here. The Court in Worsing has already said this is the kind of statute under 3582C1B that expressly permits the district courts to reopen these sentences for crack offenders before 2010 and impose a reduced sentence if it's appropriate. And so the question then is what limitations does the First Step Act set? The only limitation that we see, I guess, three limitations in the First Step Act. First, you apply the new statutory penalties. That means in no circumstance may the court go below the statutory penalty that applies under the Fair Sentencing Act. So that's 120 months or 10 years in this case. So we believe the court is constrained even if it thinks that a sentence within the career offender range of 57 to 71 months would be appropriate based on the facts and circumstances. We acknowledge that the First Step Act sets this new statutory penalty as the lower bound of the district court's discretion. But it provides no other limitations on what the court may consider in deciding what between 262 months and 120 months is the appropriate sentence. The only other limitations that are in the First Step Act are in Section 404C where it says if you have previously had your sentence reduced or imposed in accordance with the Fair Sentencing Act, you don't get another bite of the apple. And it similarly says if the court has given you a complete review on the merits and denied your First Step Act motion, you may not file another one. Nothing in there. If Congress had wanted the same restrictions, the same guidelines limits that apply in the 3582C2 context, it knew how to write them. It could have done what it did in C2, which is delegate to the Sentencing Commission the authority to place restrictions on First Step Act eligibility or First Step Act reductions. It chose not to do that. It could likewise have simply incorporated the C2 restrictions that the Sentencing Commission passed in Section 1B1.10 into the legislation. Congress didn't do that. So we think the omission is important both in the immediate statutory context of a C1B statute like this one as compared to a C2 statute and in the broader legal context where the Supreme Court has repeatedly said that the correct calculation of the guidelines range is an anchor and is a lodestone for the Sentencing Court's exercise of discretion. If we were to agree with you, should our opinion be limited to retroactive legal errors or should it go further than that? So our position is that it should go further. We acknowledge. So why is because any intervening change in the law, whether specifically declared retroactive or not, is an important data point, we think, for the Court to consider as part of the 3553A factors. Again, if someone would not be treated as a career offender today but was under previous law, we think it's important for the Court to acknowledge that because it brings in the 3553A6 factor of disparity between otherwise similarly situated defendants. So we think it's an important data point. That said, we acknowledge if you want to draw the line between retroactive and non-retroactive cases, you can certainly do that, reserve the other one for a future case. Would you say that a Court's required to consider that, though? Is that an end-run around 2255 and the fact that we said you don't get the benefit change guideline applications on a 2255? No, it's not, because in the 2255 context in the Foote case, for example, the Court has said an advisory guidelines error is not cognizable. In other words, it is not an error that is sufficient by itself for the Courts to open an otherwise final sentence. But this is a different context where Congress has already said finality interests aren't as important here as getting the sentence right. We are reopening these cases, giving the District Courts discretion to consider an appropriate sentence. And this goes back to my question about discretion versus required. I mean, might the answer be that when it's a retroactive legal error, you have to fix it, because the sentence was wrong when it was imposed. Whereas a non-retroactive error, the District Court should consider, and it's discretion. Yes, that is the point. And maybe this is all semantic, because your point is that at the end of the day, you're coming up with a guidelines number, and it's always discretionary whether you're going to sentence within it or not. So maybe it doesn't make much difference. So our point, yes, at the end of the day, is that it doesn't make much difference. We do think it would be, it is required for the Court to at least consider it as a data point. And I would point to the Court, and I apologize, I don't have the exact citation for this, but we cite the Boulding case in our briefs. That's Judge Junker from eastern or western Michigan. In a follow-up case called Bugs, he dealt with the career offender issue. And what he did in that case was really interesting, and I think it could be a model for other District Courts to do, which is that he laid out a chart that said, okay, here are the various statutory and guidelines penalties that have applied over time in this case. The ones at the time of sentencing would have been this and this. The ones at the time now would be this and this. You know, if you correct the career offender error, it's X. And if you don't correct it, it's Y. And so he's like, I'm considering all of these data points, and in light of them, I'm selecting what I think is the appropriate sentence. I guess, let me just, I'll stop in a minute, but I guess I'm not understanding under 3553A, what is even the relevance of the original guidelines range, which we now know was erroneous, and we've held that decision to be retroactive. This guy was never a career offender. Why is it any more relevant than a typo would have been on his original PSR? What does it tell us that there was a mistake made? It tells us nothing. So why is that a data point? I agree. It shouldn't be a consideration. I think Congress and the general public would be shocked at the idea that Congress has passed this act to remedy what it has determined are unfair, unduly harsh sentences, and to do what the district court interpreted the act to do, which is to actively ignore that. To say, I'm not authorized to even factor it in. Well, Congress shouldn't pass this to correct career offender sentences, right? No, Congress... All the time, people get sentenced to things the law changes, and they don't get to change it, because there's no specific law addressing it. That's true, and certainly Congress could come back some day and say, well, we're going to correct career offender errors for other categories of drug offenders, or we're going to give other drug offenders a chance for a second look. Although I thought we said in Worsing that one of the reasons the eligibility criteria was so loose in this statute was precisely to reach people whose sentencing guidelines range didn't change. Wait, I want to make sure I'm saying this right. Their original sentence wasn't based on the sentencing guidelines because they had this really high career offender. You know what I'm trying to say. And the point was to reach those people who had been designated career offenders who couldn't get relief under 782 because their original sentence wasn't based on the statutory minimum. It was based on the higher career offender designation. That's exactly right, and I think that's one of the important points about what Congress is doing here, and the history that's recounted in Worsing illustrates that. It's, I think, quite plausible to conclude that the reason Congress wrote this statute so broadly and didn't delegate to the Sentencing Commission the authority to impose restrictions as it did in the C2 context is that Congress wasn't happy with how restrictive those limits that the Sentencing Commission placed on it were. And so by drafting this statute very broadly, opening it up to wide district court discretion, Congress was correcting what it believed to be an error in the way the Sentencing Commission had overly limited its prior. Just before you, I don't want to take up all your time, but we would be creating a circuit split if we agreed with you. Is that right? So yes and no. The precise question presented in Hegwood isn't presented in this case. If you look at the very first paragraph in Hegwood, the Court says the question presented here is whether this requires a plenary re-sentencing. As we said in the opening brief, we don't think it does. That said, to be completely candid, we absolutely think that the statutory analysis in Hegwood is dead wrong. We don't think it adequately factors in the immediate statutory context, which is the contrast with C-2. We don't think it considers the broader legal context of Gall and all of these Supreme Court cases. And we also don't think that it addresses a retroactive decision as opposed to a non-retroactive one. So for all those reasons, we think that Hegwood is wrong. I wouldn't necessarily characterize it as a circuit split. I think the Solicitor General's Office would say it's not because the holding, they're not the same. But they're both about intervening changes in the Career Offender Guideline law. And yes, I mean, in part, the one difference being this is a retroactive one, that one was non-retroactive. The other difference being that the defendant there, for whatever reason, argued, well, the only way I can get this is a plenary re-sentencing. And we think that's just a misreading of the law. And if you look at what Judge Locke did in Black and the Court in Benjamin as well, both said there's no need for a plenary re-sentencing to correct what is an undisputed legal error in applying this guideline. I can do that simply by looking at the PSR. Thank you, Mr. Scarborough. Ms. Ray. May it please the Court. This statute is not broad. The statute 3582C2 tells, or 3582 generally says that a sentence may not be reduced except to the extent Congress authorizes. And that extent applies not only to eligibility, but also to scope. And this statute, Section 404B, says it is to be applied as if Sections 2 and 3 of the Fair Sentencing Act were in effect. That's it. It's limited. The Fifth Circuit got it right. The Eleventh Circuit got it right in its unpublished decision. The Sixth Circuit has gone essentially the same way. And all of those decisions are respecting the language. This is not an opportunity, as the Supreme Court made clear in Dillon. This is to impose a reduced sentence means not to open up everything. It means to impose a reduced sentence based only on the authority that Congress has given the courts. What do we do with all the intervening case law then? It's just not authorized by the statute. This Court does the same thing with that case law that this Court would do in any other context where there have been new cases that have been decided. And I would note that even for defendants who were sentenced between or committed their offenses between August of 2010 when the Fair Sentencing Act was in effect and 2011 when this Court decided Simmons, those defendants don't get this result under the defendant's interpretation of the statute. There is not equity. Once we say that a decision is retroactive, we are saying it applies post-conviction. It applies in collateral proceedings. And I know that AEDPA has a one-year statute of limitations. But to the extent there's arbitrariness built into this, it looks to me like it's coming from AEDPA. Once we say it's a retroactive decision, it is supposed to, in theory, apply to everybody. AEDPA cuts a lot of people off at the pass. But, you know, that's an AEDPA problem or not a problem. It's entirely appropriate. But one way or the other, the kind of arbitrary thing you're pointing at is the one-year statute of limitations. Once you say it's retroactive, it's supposed to apply to everybody. Your Honor, it doesn't if Congress doesn't authorize it to apply to everybody. So 3582 is AEDPA. It's AEDPA in a different way. So what the Court held in foot was, under AEDPA, the District Court doesn't have the authority to reduce the sentence based on Simmons. And that's what 3582 says, is you get a limited sentence reduction. And Dillon made that quite clear. That the word to reduce the sentence does not mean you get the benefit of Booker, you get the benefit of Simmons, you don't get the benefit of those things. So basically, the position is we want the District Court to say, I'm denying you a reduction in your sentence because you would have been sentenced the same way under the guidelines erroneously at the time of your first... Would it be any different if it were a typo? What if there was just a typo in the PSR? Like, look, I'm sorry. The PSR back then said 600 months. You would have gotten 600 months anyway, so I am going to have to deny you a reduction. I'll tell you what wouldn't have been different. The government is not saying that he couldn't have gotten a reduction. So I want to be very clear about that. This is not eligibility. He's eligible for a reduction. But the entire only reason he was denied a reduction is what used to be your eligibility argument and is now your scope argument. What does it mean to say you're eligible even though you would have been sentenced the same way but you will be denied a reduction because you would have been sentenced the same way? It means that at 404C, the District Court still has the... And even at B, this Court has the discretion to reduce the sentence. Can you point... Did this District Court think he had discretion to fix the cemetery? I believe so, because otherwise, why would he have gone through the 3553A analysis? As to that 3553A, is there no position whether that's meaningless if you don't go back and determine what the appropriate guidelines should be? The District Court can, in the process of the 3553A... It's not as if the District Court has to close its eyes completely. But we begin with the guideline range that existed at the time the defendant was sentenced and that depends on when he committed his offense, right? Let's bracket to a minute that it actually didn't exist then under Simmons, which applies retroactively. I just want to bracket my concern. Again, Judge Harris, it's not... As though there were a typo. But it's not the government. This is Congress who has to establish authority for the Court to impose a reduced sentence. So if it were a typo, it would be the same. Say, just by mistake, the PSR said 600 months. So we start with 600 months and then we figure out, I don't want to cut you off. So we start with the typographical error and then what? If there were a typographical error, then the Court could consider that. It could, but it wouldn't have to. No, it doesn't have to, because Congress doesn't say you get to correct every error that occurred in your sentencing proceeding. This is not broad. And I sort of defy anyone to read the statute as broad because it just doesn't say that. 3582 says you can't change a sentence. That's the general premise. And then we have 3582C1B that says, to the extent Congress says you can. What has Congress said? One, you're eligible and Worsing established eligibility. The government hasn't changed its position, by the way. The government's position has been consistent. These defendants are eligible under Worsing. We are still arguing that they're not eligible in other circuits. But that has nothing to do with Section 404B and the scope once one becomes eligible. And so the Court says you are expressly limited only to the extent and Dillon, the Supreme Court, the Supreme Court interpreted impose a reduced sentence. And the Supreme Court said this doesn't open up to Booker. This doesn't open up to anything. This is not a plenary resentencing. And forget about the language of plenary resentencing. The point is you don't get to do anything except what Congress says. And what Congress said here is you're going to apply Sections 2 and 3 of the Fair Sentencing Act as if they were in effect at the time the defendant committed his offense. I sort of cut you off before. So you start with the original range, whether or not it has a Simmons error, whether or not it has a typo. But then under 3553A you were about to say the judge can consider those errors, but it doesn't have to. No, it doesn't have to. Well, yes. I mean, I don't think that It seems like this judge thought he couldn't, that he was not authorized to consider the Simmons error. Well, what he said is that the defendant is eligible for reduction, which means we're now in the land of discretion. But if I were to read this district court opinion as if I thought this district court thought it was not authorized to consider in its discretion the Simmons error when it got to the 3553A analysis, you would think it would need to go back so that the district court could exercise that discretion. No, I mean, I don't think that You think the district court was authorized to do it. If, hypothetically, the district court didn't think so, why wouldn't we send it back? I don't think that the district court is authorized to do an end run around 2255 or the other statutory limitations. So it is authorized to consider the Simmons error, or it's not? It's not authorized to simply substitute Simmons and say oh, okay, well now your guideline by the way, it's not 57 to 71 months, the guideline range is 120 months. Because that section 5G1.1 trumps. So we're not talking about the multiple levels of reduction. Okay, so he can consider it, but he can't do that? He can't just substitute. What he really is supposed to do is look at the guideline range that applied we're supposed to apply sections 2 and 3 of the Fair Sentencing Act, period. Then, at that point, he has discretion. Now, the district court, the government does not think that the court should consider the Simmons error and simply substitute it and say oh, now I can go down to 120. We haven't appealed the decisions in which judges have done that, but we don't think that that's what the Fair Sentencing Act read properly allows. What consideration should they give the Simmons error? 3553A. Well, that's what I'm asking. So when they get to 3553A, you've said they can't just substitute in the new correct range. What should they do? The nature and circumstances of the offense. The nature and circumstances of the seriousness of the offense. The nature and circumstances of, you know, characteristics of the defendant. The need for deterrence. The need to protect the public. And Judge Reidinger did those things in this case. Does this make them not similarly situated? Your opponent is saying that this error makes the defendant not similarly situated to other defendants nowadays who are being sentenced as career offenders. That's a 3553A factor, and I think that's pertinent to Judge Harris' question. I think so, too. I mean, I think that the court can consider it in the context of considering that, but at the same time has to consider all of the rest of it. And it doesn't, it is not an unwarranted sentencing disparity with respect to others who were sentenced at the same time. And so you sort of have to, I think it's appropriate and okay for a court to consider it in the context of the 3553A factors. It is not okay for a court to simply come in and say, because that's just not the authority that Congress gave the district courts, and say I'm going to substitute this guideline range for the earlier guideline range. You start always with the guideline range, and what the Fair Sentencing Act says is we start with the guideline range that is yielded after we change one thing, and that is we apply Sections 2 and 3 of the Fair Sentencing Act. Can I ask you about that, too? So you do have to, the judge has to apply Sections 2 and 3 to come up with what the guideline range would have been. Right. So the judge doesn't start with well, here's the guideline range that was in the Sections 2 and 3, and let's see if I can tinker with it. So if there's a typo in the guideline range for PSR, that's out the window. The judge starts fresh with looking at if 2 and 3 were in place, what would the guideline range have been? Am I right about that? I think that is right. Thank you, Judge Rushing. I would say that if somehow the typo weren't relevant to that particular analysis, perhaps, it wouldn't, but yes, if the judge looks at it and does a recalculation, and that's what's happening in these cases, right? The probation offices are going through and looking at, okay, let's substitute Sections 2 and 3. Let's reduce the statutory limits, the drug amounts that trigger the statutory limits. We're going to reduce that. That's all. Now what guideline range do we arrive at? So if there is a typo that affected that particular analysis that would have affected the guideline range at the time, that is accommodated in that process. But why isn't a retroactively applicable case accommodated in that process? I simply don't understand. Once we held that Simmons was retroactive and Miller, we are saying it's like a typo. You weren't a career offender. It's not that you are now not a career offender. It's that you weren't a career offender then, just like the 60 was supposed to be 600 or vice versa. I just don't see the difference. Because there has to be an avenue. Congress has to give defendants an avenue to correct those errors. They also have to give them an avenue to correct a typo. Everything you are saying about the structure of this statute would apply also. I just... You can't come into court and say I want a new sentence because there was a typo. Right, but if in the process of what Congress has authorized the court to do, it has to recalculate the guidelines and correct this one error, then that's what it does. I don't understand why if Congress has authorized the court to recalculate the guidelines, I don't understand why that would include fixing typos but not include fixing errors that have been identified by retroactively applicable case law. I just don't understand that. As a practical matter, there's nobody, including the government, would get in the way of a typographical error like that. Especially if it were significant. Because it's just that. But it doesn't give the court the authority. Technically it doesn't. It doesn't. Just like I will say, it doesn't give the court the authority to apply the retroactive crack amendments. So the court cannot fix the typo. If it's in the process of changing or altering that sections 2 and 3 of the Fair Sentencing Act, then it can't. Let's say the typo had to do with how many grams of crack the defendant was held responsible for. In that process, the court's going to be reconsidering that issue. So yes. Not if it was a career offender because of a typo. Exactly. But I think as a practical matter it doesn't make much difference because in the end, chances are good that the government wouldn't. Just like I said, the courts that have considered this in a discretionary fashion. I'm laughing only because I would have hoped chances were 100%. The government wouldn't stand in the way. No, I don't think the government would have. We wouldn't. But the reason that the retroactive decision in Simmons doesn't apply is the same reason it doesn't apply in Foote. There has to be statutory authority to reduce a defendant's sentence. And the statutory authority in this case is limited. And it is limited to correcting only one mistake. The bigger question here is judicial integrity. Given that we're required to calculate the guidelines again under 35 53A, can Congress force the courts to perpetuate an error? Congress gives courts the authority to reduce perpetuate an error. But there are many errors that occur. And it happens regularly, at least in my chair, that I see a mistake and it's not cognizable under 2255 or it's not cognizable under 2241 and it's a significant mistake. And I look at it and think, you know, but that is Congress writes the laws. Congress wrote 3582. Congress wrote the First Step Act. And those things don't authorize the court to apply Simmons to retroactively in this context. And to do so would be to undermine Foote and all of the rest of it. Because the whole point of Foote was, this is hard. This is tough. But Congress didn't give us the authority to do this. And it's the same thing here. Congress says it's a limited reduction. The Supreme Court's language in the word, impose a reduced sentence. It doesn't open it up to all kinds of errors. It says, to the extent that Congress authorizes. And here it said, apply sections 2 and 3 of the Fair Sentencing Act. Change 5 grams to 28. Change 50 grams to 280. And then calculate the guideline range. If it has changed, then the court starts from that lower guideline range when it exercises its discretion and decides under 404C whether or not to impose the reduction and to the extent of the reduction, if any. What's the government's position when the court is doing the 3553A analysis? Does it consider post-sentencing factual developments? Like, you know, someone's behavior in prison? Absolutely. I mean, that's authorized because Pepper and also we are agreeing that 3553A applies. If Judge Ridinger had wanted to reduce Mr. Chambers' sentence, he could have. And I think he understood that because he went through the 3553A factors. And he said, need for deterrence, protect the public, the enormous quantity of drugs. I mean, he considered the seriousness of the offense. If he had wanted to do it, he would have, he could have, he knew he could have. The purpose of the First Step Act, though, was to provide an individualized review of if we accept your position, aren't we undermining the policy and the whole purpose of the First Step Act? Your Honor, with all due respect, the purpose of the First Step Act was to apply the Fair Sentencing Act to the defendants who came before and were convicted of crack offenses. That's it. Congress did not say now, and in fact, if Congress had wanted to, it could have said redo all of it. It could have said resentence the defendant. It said impose a reduced sentence. And so Congress did that because he's actually eligible for a sentence reduction. He's getting the benefit of the First Step Act. Then it's up to the district court. The only dispute here is how do we calculate the guideline range from where the district court's discretion begins? What's that guideline range? We say the district court got it right and held that as a matter of law, the only alteration it could make in determining that guideline range was to change the crack the drug quantity calculations. And that gives Congress's intent effect. Now, we can look at everything else and think, well, Congress really wanted to write the ship everywhere, but it didn't. It didn't say we're going to apply Johnson. Could have. We're going to apply all the new guidelines under 4B1.1. Could have said that. Could have said the defendant gets the advantage of all these other changes, retroactive or not. Did not say that. It said we're going to, as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the defendant committed his offense. And so Chambers got the benefit of that because he had the opportunity to have his sentence reduced. And Judge Reininger looked at it and said, actually, the seriousness of your offense was, and we can disagree with that. We can look at it and say, I might have said something different. But that's not. The judge gave him the opportunity, had the discretion, chose not to exercise that discretion. And for that reason, the district court's decision should be affirmed, if your honors have no further questions. We respectfully request that the court affirm the district court's exercise its discretion not to reduce Mr. Chambers' sentence. Thank you. Mr. Carver. Your honors, I think my friend Ms. Ray and I are reading a different statute because she repeatedly says that Congress restricts in the First Step Act what the court can do with respect to the guidelines and it only allows the courts to consider the guidelines changes that they want to consider. The text of the First Step Act, as this court recognized in Worsing, doesn't refer to the guidelines at all. And Worsing says, look, it's using the word statutory and statutory penalties to make clear that what they are talking about is the statute. What that means, going forward, is that the lower bounds of the district court's discretion under the First Step Act are set not by a calculation of the guidelines range, but by the low end of the new statutory penalties, which is 10 years in this case. Here, my friend also referred a lot to the Supreme Court's decision in Dillon, which interprets C-2. And Dillon just doesn't interpret a C-1B statute. And to answer Judge Floyd's question about can Congress force the courts to perpetuate one of these guidelines errors, I think Dillon tells us, unfortunately, that Congress can't do that if it wants to. And in C-2 and in 1B1.10, there's specific language that says in considering a reduction in this context, you may not make any other changes to the guidelines. Congress could have done that and if they had written that, if they had said you may impose a reduced sentence as if these statutory penalties were in effect, but in doing so, you may not make any other changes to the guidelines. If they had just copied the language from 1B1.10, unfortunately, we wouldn't be here. Congress didn't do that. And we are asking this court to respect Congress's choice to make the First Step Act different than all of these previous rounds of redrafted relief. I want to touch on an issue that came up in the questioning about the floor and whether the District Court understood that it had discretion here. I think if you look at Joint Appendages page 50 and 51, you can see that the court made an error. So at Joint Appendix page 50, in the first sentence of the first full paragraph, the court says having determined that he's eligible, my next step is to determine the extent to which I may reduce the sentence. In other words, what's the floor below which I may not go under the First Step Act? The court then answers that question by doing what? By calculating the guidelines range and determining that it was 262 to 327 months. And in that analysis he cites Dillon. And this all makes sense because the court is doing a scope analysis under C2. It's just that that's not the right analysis under the First Step Act. Under C2 the court may not go below the amended guidelines range. That's what the court was doing here. He misunderstood the scope of his authority. And so that's the second reason in our briefing, the second procedural error that we think the court committed here. And that's backed up on Joint Appendix page 51, where the court specifically says the First Step Act quote, does not authorize me to consider the career offender error that counsel is asking me to consider. The court itself speaks in terms of authority. I think that very clearly demonstrates it did not understand that it could go below the floor. And I think Judge Harris, you asked a question about whether the government says you can consider post-sentencing factual developments good or bad conduct within the Bureau of Prisons as it may relate to the 3553A factors. It's also clear in this case that despite the government's position now, the district court didn't understand that discretion either. And you see that in the 3553A analysis, which is limited solely to the facts and circumstances that were present at the time of the offense. He did not respond to our evidence that Mr. Chambers has been an excellent inmate in the Bureau of Prisons. He's done very well, completed lots of programmings, and had only two, I think, very minor infractions. So he's been an excellent inmate. We think that weighs in his favor. If you read the one paragraph that the court engaged in, the 3553A analysis, on Joint Appendix Phase 52, I would note that it is nearly a verbatim, word-for-word recitation of a paragraph from Ms. Ray's very excellent filing in Joint Appendix 43. So I think that shows us the court didn't really engage with our arguments about post-sentencing mitigation. He merely copied and pasted almost word-for-word the government's submission on 3553A. And I think what's important about that when you're considering the scope of the reduction is what the district court is saying here is we have to do a time-travel mode of analysis. That's why its opinion is written in what would have the district court done, not what do the 3553A factors counsel. And in a time-travel mode of analysis, you can't consider post-sentencing conduct because at the time that Mr. Chambers was sentenced, the district court had no idea whether he was going to be an excellent inmate to compile a very strong record for rehabilitation like he did, or whether he was going to be an awful inmate and commit lots of disciplinary infractions that would justify an even higher sentence. So the court excluded that from its analysis based on its misunderstanding of the scope of this discretion. For all those reasons, Your Honor, we're asking the court to send this back to instruct the district court that it must correctly calculate the guidelines range, that it must recognize that it has the authority to vary even below that range, and that it must consider our mitigating arguments. If the court has no further questions, I yield the time. Thank you very much. Thank you very much, Counsel. We'll come down and greet you and then move to the second case. How's your hand feel? It's not where it needs to be. Wait for some more weather. Good to see you. Good to see you. Oh, that's okay.
judges: Henry F. Floyd, Pamela A. Harris, Allison J. Rushing